

FILED

**Margaret Botkins
Clerk of Court**

1:20 pm, 8/25/20

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOHN C. FRANK and GRASSFIRE, LLC,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>ED BUCHANAN, Wyoming Secretary of State, LEIGH ANNE MANLOVE, Laramie County District Attorney, DEBRA LEE, Laramie County Clerk, in their official capacities,<br><br>　　　　　Defendants. | Case No.  20-CV-138-F |

# ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court upon Plaintiffs' Motion for Preliminary Injunction, filed August 3, 2020. (CM/ECF Document [Doc.] 13).

## BACKGROUND

Plaintiffs bring this case as a challenge to the constitutionality of Wyoming Statute § 22-26-113, which regulates electioneering near polling places. According to Plaintiffs, this statute offends the First Amendment for failure to narrowly tailor its restrictions. The statute provides:

> (a) Electioneering too close to a polling place or absentee polling place under W.S. 22-9-125 when voting is being conducted, consists of any form of campaigning, including the display of campaign signs or distribution of campaign literature, the soliciting of signatures to any petition or the

> canvassing or polling of voters, except exit polling by news media, within one hundred (100) yards on the day of a primary, general or special election and within one hundred (100) feet on all other days, of any public entrance to the building in which the polling place is located. This section shall not apply to bumper stickers affixed to a vehicle while parked within or passing through the distance specified in this subsection, provided that:
>
>> (i) There is only one (1) bumper sticker per candidate affixed to the vehicle;
>>
>> (ii) Bumper stickers are no larger than four (4) inches high by sixteen (16) inches long; and
>>
>> (iii) The vehicle is parked within the distance specified in this subsection only during the time the elector is voting.

Wyo. Stat. Ann. § 22-26-113.

The statute was enacted in 1890, with amendments in 1973, 1984, 1990, and 2018. The most recent 2018 amendment implemented the 100-foot buffer zone around polling places on absentee voting days and added language exempting qualifying bumper stickers from parking or driving through the buffer zone.

### STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy that is granted only when the movant's right to relief [is] clear and unequivocal." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) (internal citation and quotation marks omitted). To prevail on a motion for a preliminary injunction, movants must generally show the following four factors weigh in their favor: "(1) [they are] substantially likely to succeed on the merits; (2) [they] will suffer irreparable injury if the injunction is denied; (3) [their] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Brooks v.*

2

*Colorado Dep't of Corr.*, 730 F. App'x 628, 630 (10th Cir. 2018) (internal quotation and citation omitted).

Courts in the Tenth Circuit disfavor certain types of preliminary injunctions, including preliminary injunctions that alter the status quo. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). "Because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief," movants for this type of preliminary injunction must satisfy a heightened burden. *Id.* at 975–76. In this circumstance, Plaintiffs "may not rely on [the Tenth Circuit's] modified likelihood-of-success-on-the-merits standard" and instead "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.*

## DISCUSSION

### *(1) Whether there is a substantial likelihood of succeeding on the merits*

The First Amendment provides "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. 1. Regarding restrictions on the freedom of speech in public forums, the Supreme Court has held that "the government may regulate the time, place, and manner of the expressive activity, so long as such restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." *United States v. Grace,* 461 U.S. 171, 177 (1983).

The Supreme Court previously considered whether a Tennessee regulation imposing a 100-foot "campaign-free" zone around polling places on voting days offended the First Amendment. *Burson v. Freeman*, 504 U.S. 191 (1992). According to the Supreme Court in *Burson*, the Tennessee regulation's application solely to political speech rendered it a "content-based restriction on political speech in a public forum," and the regulation was therefore subject to strict scrutiny. *Id.* at 198. Under this heightened constitutional standard, the State's burden was to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (internal citations and quotations omitted).

The Supreme Court determined that the Tennessee regulation survived strict scrutiny. In its analysis, the Supreme Court acknowledged not only the State's compelling interest in protecting voters from confusion and undue influence, but also its indisputable interest "in preserving the integrity of its election process.' *Id.,* at 231. To this end, the Supreme Court noted it has "upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Id.* at 199 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788, n. 9 (1983)). The Court also determined the regulation was narrowly drawn toward a necessary objective. Finding historical challenges in upholding the purity of the election process "demonstrate[d] that some restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud," the Court concluded "requiring solicitors to stand 100 feet from the entrances to polling places [is not] an unconstitutional compromise." *Id.* at 206, 211.

Although Plaintiffs point to one Sixth Circuit case undermining the result in *Burson*, as well as to a Wisconsin case regarding a 500-foot buffer zone, *Burson* is the only binding precedent bearing on Plaintiffs' challenge to the Wyoming statute. Nor do Plaintiffs offer any precedent to demonstrate voters at absentee locations should be entitled to lesser protection than voters on election day. As on election day, the State has the same interest in preserving the credibility of the election process on absentee days. Even on absentee days, given the availability of other nearby public fora for Plaintiffs' desired solicitation and advertisements, the Court cannot find that a buffer zone restricting Mr. Frank from displaying certain bumper stickers and Grassfire from collecting signatures "significantly impinges" their rights in light of the State's serious interest in fair elections. *See Burson*, 504 U.S. at 209 (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–196 (1986) ("Legislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.")).

Under *Burson*, and in the absence of other instructive binding precedent, Plaintiffs have failed in their burden to make a strong showing that they are likely, much less *substantially* likely, to prevail in this suit on its merits.

### *(2) Whether irreparable injury will occur*

Plaintiffs contend they will suffer the following irreparable injuries if § 22-26-113 is enforced in the course of the 2020 election cycle: Plaintiffs have largely silenced themselves during this electoral season, under threat of criminal penalties; Grassfire has decided not to commence operations in the state of Wyoming; and Mr. Frank will not

5

engage the public near polling places about candidates and issues he cares about or place illegal bumper stickers on his vehicle. According to Plaintiffs, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); see also Utah Licensed *Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (meeting irreparable injury requirement due to deprivation of speech rights). In light of the seriousness of even subtle First Amendment deprivations, the State concedes Plaintiffs have met their burden on this element.

### *(3) Whether the threatened injury outweighs injury opposing party will suffer under an injunction*

Even considering that Plaintiffs' First Amendment injury might be irreparable, the balance of harms weighs in favor of Defendants. A state "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). As noted by the *Burson* Court, the harms of an injunction to this compelling interest include the potential of election fraud and voter intimidation, both of which could call into doubt the validity of an election and prompt the need to rerun it. 504 U.S. at 206, 209.

Comparatively, the potential harms to Plaintiffs of enforcing § 22-26-113 are relatively minor. Section 22-26-113 does not prohibit all electioneering, and under the statute Frank and/or Grassfire are free to display signs or solicit voters on any public space outside of the buffer zones, which according to the State, could be done strategically to ensure that nearly every voter could see their desired messages from a greater distance.

Because Frank has access to other avenues to spread his message, the law's harms to Frank are relatively minor. Similarly, Grassfire, LLC's harms are relatively minor, as Grassfire's own exhibits demonstrate the availability of sidewalk space outside the polling place. If voters wish to engage with Grassfire near the polling place, they are able to approach them.

### *(4) Whether an injunction would be adverse to the public interest*

For reasons already stated herein, it is reasonable to conclude that an injunction on § 22-26-113 would have adverse effects on the public interest, including calling into doubt the credibility of the election process. Moreover, Plaintiffs' claim for relief comes on the eve of the 2020 primary and general election cycles. To enjoin the enforcement of § 22-26-113 at this time would cause confusion to voters, election judges, and to anyone in addition to Plaintiffs who may be similarly inclined to solicit voters. Indeed, enjoining the enforcement of § 22-26-113 at this time would be contrary to the public's interest in certainty, fairness, and transparency in the electoral process.

### CONCLUSION

For the above-stated reasons, Plaintiffs have not satisfied their burden for obtaining a preliminary injunction. Accordingly, the Motion (Doc. 13) is DENIED.

Dated this  25  day of August, 2020.

*[signature: Nancy D. Freudenthal]*
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE